**Scott Ian MANAHAN and Heather M. Manahan, By Their Next Friend, Pamela M. Manahan, Appellants,**

v.

**Kimberly Inez MEYER, Haworth, Inc., and Safeco Life Insurance Company, Appellees.**

**No. 01–92–00146–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 19, 1993.

Rehearing Denied Oct. 21, 1993.

---

Bettye J. Lambert, Houston, for appellants.

C. David Towery, Ronald Scott, Susan B. Robertson, Sharon Hemphill, Dunn, Kacal, Adams, Pappas & Law, Robert L. Adams, Mary Hunnell Smith, Nancy Vassallo, Houston, for appellees.

Before OLIVER–PARROTT, C.J., and COHEN and MIRABAL, JJ.

## OPINION

COHEN, Justice.

Thomas J. Manahan, the father of appellants Scott and Heather Manahan, was employed by Haworth, Inc. (Haworth). Safeco Life Insurance Company (Safeco) issued a group life insurance policy to Haworth covering its employees that insured Manahan's life for $67,000. While hospitalized two days before his death, Manahan changed the beneficiary of the policy. He removed his two minor children, appellants, as beneficiaries and designated his fiancee, Kimberly Meyer. Safeco paid the policy proceeds to Meyer.

Appellants sued Meyer, Haworth, and Safeco, alleging the change of beneficiary was invalid because Manahan lacked mental capacity and was unduly influenced by Meyer, and that Haworth acted with Meyer to change the beneficiary, breached its fiduciary duty by failing to investigate the change in beneficiary, and negligently processed the claim and delivered the proceeds to Meyer. Appellants alleged Haworth and Safeco had notice the change of beneficiary was invalid before paying Meyer. Further, appellants alleged Safeco mishandled the claim and that Haworth was Safeco's agent in processing and paying the claim. Alternatively, appellants alleged a cause of action under ERISA,[1] claiming they were "beneficiaries" seeking recovery of money Haworth and Safeco had wrongfully paid Meyer.

The trial judge granted summary judgment for Haworth and Safeco, concluding that ERISA preempted appellants' claims. The claims against Meyer were tried, and the jury verdict favored appellants. The trial judge entered a judgment for appellants, but then entered a judgment n.o.v. for Meyer, based solely on ERISA preemption. This appeal followed.

In points of error one through eight, appellants contend their claims against Safeco and Haworth were not preempted by ERISA.[2]

1. The federal Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (1988) (ERISA).

2. The summary judgment for Haworth was expressly based solely on ERISA. The summary judgment for Safeco does not state a specific ground. When a summary judgment does not state its grounds, it will be affirmed if any ground urged in the motion is meritorious. *Insurance Co. of N. Am. v. Security Ins. Co.,* 790

S.W.2d 407, 410 (Tex.App.—Houston [1st Dist.] 1990, no writ). Safeco sought summary judgment on four grounds: 1) Safeco had no notice of the adverse claim by the Manahans before paying Meyer; 2) Tex.Ins.Code Ann. art. 3.48 (Vernon 1981) discharges an insurance company from liability upon payment to the named beneficiary; 3) Haworth was not Safeco's agent; and 4) the claims were preempted by ERISA. Because Safeco's summary judgment can be af-

### Is This an Employee Welfare Benefit Plan under ERISA?

█ Appellants argue neither Haworth nor Safeco proved this benefit plan was governed by ERISA. We disagree. Appellants' pleadings judicially admitted the facts necessary to establish ERISA's application.

ERISA applies to employee benefit plans maintained by employers engaged in activity affecting interstate commerce. 29 U.S.C. § 1003(a) (1988). Appellants pled that Haworth, a Michigan corporation with a home office in Michigan, bought insurance from Safeco, whose home office is in Washington, to cover Manahan and other Haworth employees working in Texas. Thus, interstate commerce by Haworth was admitted. An employee welfare benefit plan is "any plan, fund, or program ... established or maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment...." 29 U.S.C. § 1002(1) (1988). Appellants, in their third amended petition, asserted that: (1) Haworth furnished its employees a group life insurance policy issued by Safeco; (2) that Thomas Manahan was an employee of Haworth; (3) that Safeco's group policy insured his life; and (4) that after Manahan's death, Haworth processed the claim and the payment through its employees relations administrator. These facts establish an employee welfare benefit plan under ERISA. *See* 29 U.S.C. § 1002(1); *Hansen v. Continental Ins. Co.* 940 F.2d 971, 976–78 (5th Cir.1991).

█ Assertions of fact in live pleadings, not pled in the alternative, are formal judicial admissions. *Houston First Am. Sav. v. Musick,* 650 S.W.2d 764, 767 (Tex.1983). Summary judgment may be rendered on the pleadings when they contain judicial admissions. *Daves v. State Bar of Texas,* 691 S.W.2d 784, 790 (Tex.App.—Amarillo 1985, writ ref'd n.r.e.), *appeal dism'd,* 474 U.S. 1043, 106 S.Ct. 774, 88 L.Ed.2d 754 (1986).

The judicial admissions here distinguish this case from those relied on by appellants, *Burghart v. Connecticut General Life Insurance Co.,* 806 S.W.2d 324, 325 (Tex.App.—Texarkana 1991, no writ) (finding genuine issue of material fact as to the application of ERISA where plaintiff presented evidence her employer did not purchase or administer the program at issue), and *Nelson v. Dallas Independent School District,* 774 S.W.2d 380, 384 (Tex.App.—Dallas 1989, writ denied) (reversing summary judgment where no summary judgment proof showed plan was employee benefit plan governed by ERISA or that payment was made pursuant to such a plan). The judicial admissions show this was an employee welfare benefit plan under ERISA. 29 U.S.C. § 1002(1) (1988).

### Subject–Matter Jurisdiction of Claims Against Haworth and Safeco

Appellants next argue that even if this was an ERISA plan, summary judgment was improper because state and federal courts have concurrent jurisdiction under 29 U.S.C. § 1132(e)(1) of suits brought to recover ERISA benefits.

█ Sections 1132(a)(1)(B) and (e) of ERISA grant concurrent jurisdiction of suits by a beneficiary: 1) to recover plan benefits; 2) to enforce plan rights; or 3) to clarify rights to future benefits. Any other ERISA action is within the exclusive jurisdiction of the federal courts. 29 U.S.C. § 1132(e)(1); *Gorman v. Life Ins. Co. of North America,* 811 S.W.2d 542, 545 (Tex.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 88, 116 L.Ed.2d 60 (1991).

█ Appellants pled state law causes of action against Haworth and Safeco seeking damages for the alleged negligence and breach of fiduciary duty in the handling, processing, and administration of Manahan's death benefits under the employee group plan. When a state law claim relates to an employee benefit plan, Texas courts will construe the petition as favorably as possible for the pleader and will retain jurisdiction over those claims that may be characterized as ERISA claims falling within the scope of the three categories in 29 U.S.C. § 1132(a)(1)(B) (1988). *Gorman,* 811 S.W.2d at 547–48.

firmed on the preemption ground, we need not address the other three grounds.

Courts, however, will examine the nature of the claim and will not retain jurisdiction over those state law claims relating to an employee benefit plan that do not fall within the three categories outlined in section 1132(a)(1)(B). *Id.*

Here, appellants' state law claims against Haworth and Safeco do not fall within the scope of section 1132(a)(1)(B). The claims do not seek to recover benefits under a plan, seek to enforce rights under a plan, or seek clarification of rights to future benefits. Instead, appellants' state law claims allege improper administration of an employee benefit plan. Thus, they are within the exclusive jurisdiction of the federal court. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987) (holding state lawsuit asserting improper processing of claim for benefits under ERISA-regulated plan was preempted by federal law); *Gorman,* 811 S.W.2d at 547 (holding claims for breach of fiduciary duty, punitive damages, and mental anguish damages relating to an ERISA-regulated plan do not fall within section 1132(a)(1)(B) and are preempted); *see also Petrolite Corp. v. Barnhouse,* 812 S.W.2d 341, 345–46 (Tex.App.—Corpus Christi 1991, no writ) (holding state law claims for breach of fiduciary duty, quantum meruit, fraud, and breach of good faith and fair dealing of ERISA-regulated plan do not fall within section 1132(a)(1)(B) and are preempted).

For their concurrent jurisdiction claim, appellants rely on *Burghart,* 806 S.W.2d 324, and *Carland v. Metropolitan Life Insurance Co.,* 727 F.Supp. 592 (D.Kan.1989), *aff'd,* 935 F.2d 1114 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 670, 116 L.Ed.2d 761 (1991). Those cases are distinguishable. Both were actions to recover denied insurance proceeds. *Burghart,* 806 S.W.2d at 325; *Carland,* 727 F.Supp. at 595. Thus, concurrent jurisdiction there was proper under section 1132(a)(1)(B). Here, appellants never alleged that Haworth or Safeco denied coverage or withheld benefits.

■ A state lawsuit asserting improper processing under an ERISA-regulated plan is preempted by federal law. *Pilot Life,* 481 U.S. at 56, 107 S.Ct. at 1557. In their alter-native claim under ERISA, appellants alleged that Haworth "in administering and controlling said insurance proceeds is liable to plaintiffs by virtue of having received the proceeds and delivering them to [Meyer] after notice of an adverse claim by plaintiffs." This alleges improper handling and processing of a claim for benefits. Whether pled under state or federal law, it does not fall within the three categories of section 1132(a)(1)(B) allowing concurrent jurisdiction. Even as pled under ERISA, the trial court did not have subject matter jurisdiction of appellants' claim against Haworth or Safeco. Summary judgment for Haworth and Safeco on this issue was proper.

Points of error one through eight are overruled.

### Appellants' Claim Against Safeco under Article 3.48 of the Texas Insurance Code

■ In point of error nine, appellants claim their cause of action against Safeco under TEX.INS.CODE ANN. art. 3.48 (Vernon 1981) was not preempted by ERISA.

ERISA "preempts" state laws that "relate to" covered employee benefit plans. 29 U.S.C. § 1144(a) (1988). ERISA has a savings provision that excludes from preemption state laws that regulate insurance. 29 U.S.C. § 1144(b)(2)(A) (1988); *Metropolitan Life Insurance Co, v. Massachusetts,* 471 U.S. 724, 737, 105 S.Ct. 2380, 2388, 85 L.Ed.2d 728 (1985).

Appellants argue article 3.48 is not preempted because it regulates insurance. Article 3.48 provides:

Whenever any person shall procure the issuance of a policy of insurance on his or her life in any legal reserve life insurance company, and designate in writing filed with the company the beneficiary to receive the proceeds thereof, the company issuing the policy shall, in the absence of the receipt by it of notice of an adverse claim to the proceeds of the policy from one having a bona fide legal claim to such proceeds or a part thereof, pay such proceeds becoming due on the death of the insured to the person so designated as

beneficiary, and such payment so made, in the absence of such notice received by the insurance company prior to the date of the payment of the proceeds, shall discharge the company from all liability under the policy.

Tex.Ins.Code Ann. art. 3.48 (Vernon 1981).

■ Assuming that article 3.48 regulates the business of insurance, appellants' claim under article 3.48 is still preempted. The saving clause cannot save from preemption a state law that provides remedies not provided by ERISA. *Cathey v. Metropolitan Life Insurance Co.,* 805 S.W.2d 387, 391 (Tex. 1991). "[T]he policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Pilot Life,* 481 U.S. at 54, 107 S.Ct. at 1556. Congress intended all suits alleging improper claims processing be governed only by ERISA. *Ingersoll–Rand v. McClendon,* 498 U.S. 133, 144, 111 S.Ct. 478, 485, 112 L.Ed.2d 474 (1990); *Pilot Life,* 481 U.S. at 52–54, 107 S.Ct. at 1555–56. ERISA's enforcement scheme cannot be supplemented by state law remedies; thus, a state statutory remedy for improper claims processing is not available against an ERISA plan or its administrator. *Cathey,* 805 S.W.2d at 391 (holding Texas Insurance Code section 16 of article 21.21 and article 3.62 provide recoveries not included under ERISA and are thus preempted).

Here, appellants alleged Safeco violated article 3.48 by paying Meyer after receiving notice of an adverse claim. Appellants' suit under article 3.48 was therefore one for improper claims processing. That claim is preempted by ERISA. *Cathey,* 805 S.W.2d at 391. Summary judgment for Safeco on this issue was proper.

We overrule point of error nine.

### Appellants' State Law Claim Against Meyer

■ After Haworth and Safeco obtained summary judgments, a trial was held on the undue influence claim against Meyer. The jury found that Manahan lacked mental capacity to change the beneficiary and that Meyer secured the change by undue influence. The jury awarded $40,000 in exemplary damages. The trial judge first granted judgment for appellants, but then granted a judgment n.o.v. on the sole ground that the claim against Meyer was preempted by ERISA, and thus, the trial court lacked subject matter jurisdiction.

In points of error 10 through 15, appellants assert the judgment n.o.v. was erroneous because ERISA does not preempt their claim against Meyer.

Initially, appellants claim Meyer failed to prove this was an ERISA plan. We disagree. As outlined above, appellants pled facts that established an ERISA plan. *See* 29 U.S.C. § 1003(a). Moreover, appellants have not filed a statement of facts. We must presume, absent a statement of facts, that the evidence at trial supported the judgment n.o.v.

> The preemption clause of ERISA provides:
> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title.

29 U.S.C. § 1144(a). Thus, we must decide whether the claim against Meyer "relates to" an employee benefit plan.

The Supreme Court has broadly interpreted the "relates to" language of the ERISA preemption provision. *Shaw v. Delta Air Lines,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection or reference to such a plan." *Id.* The words 'relate to' should be construed expansively. *Id.* "State laws found to be beyond the scope [ERISA preemption] are few." *Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290, 1294 (5th Cir.1989).

Nevertheless, some state laws "may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan."

*Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. Appellants contend their claim against Meyer is either wholly unrelated to ERISA or so remotely related that it is not preempted. *See Drinkwater v. Metropolitan Life Ins. Co.,* 846 F.2d 821, 826 (1st Cir.1988), *cert. denied,* 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988) (ERISA did not preempt emotional distress claim because the claim did not require plaintiff to show anything at all about the ERISA plan); *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enter. Inc.,* 793 F.2d 1456, 1470 (5th Cir.1986) (ERISA did not preempt state common law of corporate fiduciary duty because it affected benefit plan in too tenuous, remote, and peripheral manner); *Framingham Union Hosp., Inc. v. Travelers Ins. Co.,* 721 F.Supp. 1478, 1490 (D.Mass.1989) (ERISA did not preempt state law claims for accountant malpractice, recission, and negligent supervision of agent because those claims did not "relate to" ERISA plan).

Meyer argues that appellants' undue influence claim directly relates to the ERISA plan because it would determine the beneficiary under the ERISA plan. We disagree.

Meyer relies on *MacLean v. Ford Motor Co.,* 831 F.2d 723 (7th Cir.1987), which held that ERISA preempted an Indiana statute governing testamentary transfers. *Id.* at 728. We consider *MacLean* to be distinguishable. The issue was whether the plan administrator should distribute plan assets to the designated beneficiary of the decedent's life insurance policy, as provided by the plan, or to heirs listed in the decedent's will. *Id.* The court wrote:

> Clearly, a state law which would change a beneficiary designated by the terms of an employee benefit plan is a law relating to the plan and as such would be superseded by ERISA.

*Id.* at 725. That did not happen here. The designated beneficiary under Manahan's plan was paid. The *MacLean* court stated that a holding that ERISA preempted state testamentary law furthered the congressional goal of avoiding "[a] patchwork scheme of regulation," because the law governing testamentary transfers varies from state to state. *Id.* That is not so here because the suit against Meyer imposes no regulation, patchwork or otherwise, on the plan. A judgment against Meyer would have no effect on the plan, on the employer, or on the administrator. Finally, the court concluded that allowing a plan's beneficiary designation to be replaced by state testamentary law would frustrate the congressional objective of preventing inconsistent state laws from regulating employee pension plans. *Id.* That gives us no concern for two reasons. First, the judgment against Meyer does not regulate any plan or any fiduciary. It affects no one except Meyer. Second, we are not here dealing with a state testamentary law that varies from state to state. We have found no state that recognizes changes in beneficiary designations made by mental incompetents and none that recognizes changes caused by undue influence. These doctrines of state law do not threaten inconsistent federal regulation of anyone.

An increasing number of cases has held that ERISA is not a magic word that makes all state regulation go away. Some have upheld state laws that stripped designated plan beneficiaries of money and gave it to someone else. One such statute has been upheld even though it took millions of dollars away from an ERISA plan and gave it to the state government.

In *Aetna Life Insurance Company v. Borges,* 869 F.2d 142 (2d Cir.1989), *cert. denied,* 493 U.S. 811, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989), the court upheld the Connecticut escheat statute that took more than 2.5 million dollars from an ERISA plan and placed it with the state. The court admitted that the state statute would affect the ERISA plan by causing some combination of higher premiums for employers, lower benefits for employees, and lower profits for Aetna, and that Aetna would have to make administrative and accounting changes to comply with the law, changes that would differ from state to state. *Id.* at 147. The court upheld the statute anyway, and wrote:

> We find that laws that have been ruled preempted are those that provide an alternative cause of action to employees to collect the benefits protected by ERISA, refer specifically to ERISA plans and apply

solely to them, or interfere with the calculation of benefits owed to an employee. Those that have not been preempted are laws of general application—often traditional exercises of state power or regulatory authority—whose effect on ERISA plans is incidental. . . .

What triggers ERISA preemption is not just any indirect effect on administrative procedures but rather an effect on the primary administrative functions of benefit plans, such as determining an employee's eligibility for a benefit and the amount of that benefit. . . . The escheat law has no effect on Aetna's original determination of an employee's eligibility for benefits. The indirect economic and administrative impact is of a kind similar to a garnishment law, which allows creditors to seize benefits before an employee ever receives them.

*Id.*

The court acknowledged that the statute would have a significant economic impact, would affect relations with principal ERISA entities, and would impose a different and more elaborate procedure on beneficiaries to collect their claims from the state. Nevertheless, it found that indirect economic impact alone was not sufficient and that the intrusion in the relationship between Aetna and its plan beneficiaries was no greater than that already approved in earlier cases from the second circuit and from the United States Supreme Court. *Id.* at 148. The impact of the escheat statute upheld in *Borges* far exceeds any possible effect from allowing appellants to have a judgment against Meyer.

Other cases that allowed state laws to deprive ERISA beneficiaries of their money include *Mackey v. Lanier Collection Agency & Service Inc.,* 486 U.S. 825, 829–41, 108 S.Ct. 2182, 2185–91, 100 L.Ed.2d 836 (1988), and *American Telephone & Telegraph Co. v. Merry,* 592 F.2d 118, 121 (2d Cir.1979), which held respectively, that ERISA did not preempt state garnishment of welfare benefit plans to collect general debts and did not preclude garnishment of pension plans to enforce alimony and child support orders. The decisions in *Mackey* and *Merry* are important because they allowed much more significant intrusions into ERISA plan administration than is involved here. Both cases allowed creditors to seize money directly from the plan administrator, before it ever reached the beneficiary's hand. Here, money was paid to the beneficiary, Meyer, as the plan dictates; she retains it to this day. In addition, this case is a more compelling one for upholding state regulation than *Mackey* and *Merry* because this lawsuit seeks to defeat a fraud by Meyer. The only interest involved in *Mackey* was getting payment for creditors.

Appellants are also strongly supported by *Fort Halifax Packing Co. Inc. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). There, the Supreme Court held a state statute not preempted that required an employer with an ERISA plan to pay severance benefits when closing a plant. The court held the statute was not preempted because it simply had nothing to do with the ERISA plan. It explained:

ERISA's preemption provision does not refer to state laws relating to "employee benefits," but to state laws referring to "employee benefit *plans* ". . . . [P]reemption of the Maine statute would not further the purpose of ERISA preemption. . . . We have not hesitated to enforce ERISA's preemption where state law created the prospect that an employer's administrative scheme would be subject to conflicting requirements. . . . Congress intended preemption to afford employers the advantages of a uniform set of administrative procedures governed by a single set of regulations. This concern only arises, however, with respect to benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation. It is for this reason that Congress preempted state laws relating to *plans* rather than simply to *benefits.* Only a plan embodies a set of administrative practices vulnerable to the burden that would be imposed by a patchwork scheme of regulation. . . . The requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's

obligation. The employer assumes no responsibility to pay the benefits on a regular basis, and thus faces no periodic demands on its assets that create a need for financial coordination and control.... To do little more than write a check hardly constitutes the operation of a benefit plan. Once this single event is over, the employer has no further responsibility. The theoretical possibility of a one time obligation in the future simply creates no need for an ongoing administrative program for processing claims and paying benefits.

482 U.S. at 7–12, 107 S.Ct. at 2215–18 (emphasis in original).

Here, we have less than a theoretical possibility of a one-time future payment. There is no possibility of any future payment. Full payment has already been made, and it was made in accordance with the plan. The court concluded:

> There is no occasion to determine whether a 'plan' is 'operated' in the interest of its beneficiaries, because nothing is 'operated.'.... It would make no sense for preemption to clear the way for exclusive federal regulation, as there would be nothing to regulate. Under such circumstances, preemption would in no way serve the overall purpose of ERISA.

482 U.S. at 16, 107 S.Ct. at 2220.

In language that could have been written for this case, the court stated:

> ERISA preemption analysis must be guided by respect for the separate spheres of governmental authority preserved in our federalist system.... The argument that ERISA preempts state laws relating to certain employee benefits, rather than to employee benefit *plans*, is refuted by the express language of the statute, the purposes of the preemption provision, and the regulatory focus of ERISA as a whole. If a state creates no prospect of conflict with a federal statute, there is no warrant for disabling it from attempting to address uniquely local social and economic problems.

482 U.S. at 19, 107 S.Ct. at 2221 (emphasis in original).

It is hard to imagine a more local social problem than that which this judgment seeks to cure: two minor children deprived of their father's life insurance benefits as a result of undue influence exercised upon him during a period of mental incapacity.

For other authorities that have found no preemption where state law was more intrusive than here, *see Perkins v. Time Insurance Co.*, 898 F.2d 470, 473–74 (5th Cir.1990), *Hartle v. Packard Elec.*, 877 F.2d 354, 355–56 (5th Cir.1989), and *Rebaldo v. Cuomo*, 749 F.2d 133, 137–40 (2nd Cir.1984).

It has also been held, with compelling logic, that ERISA did not preempt a state statute preventing a murderer from receiving the life insurance proceeds of her victim. *Mendez–Bellido v. Board of Trustees of Div. 1181, A.T.U. New York Employees Pension Fund and Plan*, 709 F.Supp. 329, 330–34 (E.D.N.Y.1989). The opinion in *Mendez–Bellido* distinguished *MacLean*, the case on which Meyer relies, observing that barring payment to the murderer would not affect the determination of the employee's eligibility for benefits or the method of calculating the amount of benefits due. *Id.* at 331. The court stated that, unlike state testamentary transfer laws, state laws prohibiting murderers from receiving death benefits are uniform; thus, there is little threat of creating a "patchwork scheme of regulation." *Id.* at 332. Taking an analogy outside the ERISA preemption area, the *Mendez–Bellido* court relied on *Ridgway v. Ridgway*, 454 U.S. 46, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981), where the Supreme Court considered the effect of a state constructive trust on proceeds of a soldier's group life insurance policy. When Sergeant Ridgeway divorced his first wife, a Maine court ordered him to keep his life insured for the benefit of their three children. Instead, he made his second wife the beneficiary. The Maine court imposed a constructive trust, but the Supreme Court set it aside and held that under federal law, a soldier could designate his beneficiary freely, no matter what a state court might order. No fraud was alleged in *Ridgway*. Nevertheless, the Supreme Court took pains to retain the power to prevent a fraudulent

change of beneficiary that might occur in a future case. It wrote:

> We need not presently address the legal aspects of extreme fact situations or of instances where the beneficiary has obtained the proceeds through fraudulent or illegal means, as for example, where the named beneficiary murders the insured service member.... Our ruling on a situation of that kind is reserved for another day.

454 U.S. at 60 n. 9, 102 S.Ct. at 57 n. 9. Lower courts construing the Servicemen's Group Life Insurance Act and predecessor statutes have consistently held that, as a matter of federal law, a murdering beneficiary cannot receive the insurance proceeds. *Mendez–Bellido,* 709 F.Supp. at 332–33. Thus, the supremacy of federal statutory law under ERISA and under the Servicemen's Group Life Insurance Act will yield to state law, when that is necessary to see that crime does not pay. We hold the same rule should apply to see that fraud and undue influence does not pay.

Points of error 10 through 14 are sustained. Point of error 15, alleging that appellants have a claim for proceeds in state court under ERISA, is overruled.

### Meyer's Cross Points

In her first two cross-points, Meyer contends there was no evidence to support the jury's finding of lack of mental capacity and undue influence.

■ Meyer claims she should prevail because appellants had the duty to file the statement of facts and none was filed. None was necessary, however, for us to review appellants' contention that their claim was not preempted by ERISA. On the other hand, a statement of facts is necessary to review Meyer's contention that there was no evidence showing undue influence and lack of capacity. Both the judge and the jury found against Meyer on these points. The jury found that Manahan lacked mental capacity and that Meyer used undue influence, and the trial judge rendered a judgment against Meyer. If Meyer sought to attack the jury's verdict and the judge's approval of the evidentiary basis for that verdict, it was was her duty to file a statement of facts. Without one, we cannot determine whether the evidence was legally sufficient.

Cross-points of error one and two are overruled.

In cross-point of error three, Meyer contends the trial judge correctly granted the judgment n.o.v. because Manahan "waived any right to complain based on the fact that the plan was an ERISA plan." Meyer contends appellants never denied this plan was an ERISA plan, and the issue was therefore tried by consent.

We have assumed and held throughout this opinion that the plan was an ERISA plan. Therefore, Meyer has received all the relief she is entitled to under this point of error.

Cross-point error three is overruled.

The judgment n.o.v. is reversed, and judgment is rendered that appellants recover in accordance with the trial court's original "final judgment" of November 19, 1991, which is found at pages 187–89 of the transcript and grants appellants relief based on the jury verdict.